IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **Crim No. 1:19-CR-099** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **JASEAN DESHIELDS** | **:** | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

Before the court is Defendant Jasean Deshields' motion to suppress evidence, for severance of the offenses, and to reveal the identity of the confidential informant. (Doc. 49.) For the reasons set forth below, the motion will be denied.

## I.    BACKGROUND

On March 27, 2019, a grand jury returned an indictment (Doc. 1) charging Defendant Jasean Deshields with possession with intent to distribute controlled substances (cocaine), in violation of 21 U.S.C. §841(a) (Count 1); possession of a firearm during, in relation to and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(c) (Count 2); possession of a firearm by a prohibited person, in violation of 18 U.S.C. §922(g) and 924(e) (Count 3); possession with intent to distribute controlled substances (cocaine, cocaine base, and oxycodone), in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 4); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(c) (Count 5); and possession of a firearm by a prohibited person, in violation of 18

1

U.S.C. § 922(g) and 924(e) (Count 6). On June 13, 2019, Deshields appeared before Magistrate Judge Schwab and entered a plea of not guilty. (Doc. 12.)

The offenses outlined in Counts 1 to 3 are alleged to have occurred between September 23, 2018 and September 27, 2018. On September 26, 2018, an officer with the York City Police Department and assigned as a special detective to the York County Drug Task Force applied for a search warrant at 258 E. College Avenue, Apartment #1, in York, Pennsylvania. (Doc. 49-3, pp. 1-2.) The affidavit of probable cause stated that a reliable confidential source reported to a detective with the York City Police Department that within the preceding 72 hours they were present inside the first-floor apartment at 258 East College Avenue where they observed quantities of crack cocaine, heroin, and marijuana packaged for sale. (*Id.* p. 2.) The affidavit further stated that the informant identified that the resident of the apartment and possessor of the narcotics was a "Light skinned black male" by the nickname of "Roach," and that Roach was known by the York City Police Department through prior contacts to be Jasean Deshields. (*Id.*) The officer stated that the informant should be considered reliable because they provided information that directly led to the arrest of at least ten individuals in York County for felony drug delivery, and that the informant is multi-drug user that is familiar with how crack cocaine, marijuana, and heroin, are packaged and sold in York County. (*Id.*)

The affidavit further stated that a law enforcement database reported that Deshields had a listed address of 258 East College Avenue Apartment #1 in York, and another law enforcement database reported that Deshields provided the York City Police Department with a listed address of 258 East College Avenue within the preceding year. (*Id.*) The affidavit stated that Deshields' criminal history showed prior convictions for felony drug delivery in York County during 2008, 2009, and 2011. (*Id.*) The officer stated his belief that probable cause existed to believe that crack cocaine, marijuana, and heroin were being stored for sale inside the apartment, and he requested a no-knock warrant because, among other things, the informant reported that Deshields used firearms in violence against others in the past and had cameras on the exterior of the residence, the existence of which the officer observed and verified. (*Id.* pp. 2-3.) The warrant was issued by the state judge the same day, and it was executed by York City Police the following day. (*Id.* p. 1.)

According to police reports, at the time of the execution of the warrant, Deshields was not present inside the apartment. (Doc. 49-4, p. 11.) Police recovered from the apartment various items including two weapons, cocaine and marijuana, a "large kilo press," a "sifter," and a "cutting agent." Police also found a video surveillance system installed throughout the interior and exterior of the apartment. (*Id.* p. 12.) The monitor for the cameras was located in the living room and the recording device was found in the basement. (*Id.*) The system appeared to be actively

recording during the search and it was seized for further investigation. (*Id*.) The following day, police applied for and received a search warrant for the surveillance system, and officers later reviewed the footage that was recorded between September 23, 2018 and September 27, 2018, which purportedly showed Deshields repeatedly carrying a firearm. (*Id*.)

Counts 4 to 6 involve offenses that allegedly occurred on November 1, 2018. On November 1, 2018, while the investigation involving the first search was ongoing, the York County Drug Task Force executed a search warrant on a separate residence located at 538 E. Boundary Avenue in York, Pennsylvania. Deshields was found inside seated at a table and arrested. (Doc. 49-4, p. 13.) According to police reports, an officer directed Deshields to stand up from the table, and when he did so a shaving kit fell off his lap and onto the floor. Inside the shaving kit were various plastic baggies containing crack cocaine, two bags of marijuana, two empty bags, a glass vial, and an eye glass. (*Id*.; Doc. 49-6, p. 6.) Deshields was then instructed to sit back down at the table. An officer moved items on the table that were in front of Deshields toward the center in order to prevent him from reaching them, and he found two clear knotted bags of crack cocaine that were towards the edge of the table approximately two hand lengths away from where Deshields was sitting. The table was five feet long across and the only other person at or near the table when the officers entered had been seated at the opposite end. (Doc. 49-4, pp. 13-14.) On the

chair where Deshields was sitting was a black jacket with a firearm inside the pocket. (Doc. 49-6, p. 6.) The officers searched Deshields and found $450 in his left pants pocket, $898 and two bank cards and an ID in his wallet, and keys and a pill bottle containing fifteen pills in his right front pocket. (*Id.*)

On January 8, 2021, Deshields filed a pretrial motion requesting that the court (1) hold a Franks hearing with respect to the September 26, 2018 warrant application; (2) suppress evidence recovered from the September 27, 2018 search of the apartment due to lack of probable cause; (3) compel the government to disclose the identity of the confidential informant referenced in the September 26, 2018 warrant application; and (4) sever Counts 1-3 from Counts 4-6 for purposes of trial. (Doc. 49.) The matters have been fully briefed and are ripe for review.

## II.    DISCUSSION

### A. Deshields is not entitled to a *Franks* hearing.

Deshields argues that he is entitled a *Franks* hearing because the September 26, 2018 search warrant application contained materially false statements and omissions of fact made knowingly, intentionally, and with reckless disregard for the truth. A defendant may challenge the truthfulness of factual statements appearing in an affidavit in support of a search warrant. *Franks v. Delaware*, 438 U.S. 154, 165 (1978). Because there is a general presumption that an affidavit of probable cause is valid, a defendant "must make a 'substantial preliminary showing' that the affidavit

contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause" in order to justify an evidentiary hearing on the validity of the affidavit. *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (quoting *Franks*, 438 U.S. at 171). Reckless disregard for the truth includes omissions where "an officer recklessly omits facts that any reasonable person would want to know…[or] has obvious reasons to doubt the truth of what he or she is asserting." *Id*. at 383 (quoting *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000)). The mere existence of such an omission is not dispositive, however, and court must instead insert the relevant facts and determine whether probable cause would have existed if the omission had not been made. *Wilson*, 212 F.3d at 789; *United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993) ("[A] defendant must show…that there would have been no probable cause but for the incorrect statement."). If probable cause is then found lacking, a probable cause hearing, known as a "*Franks* hearing," must be held. *Franks*, 438 U.S. at 156.

Here, Deshields argues that the search warrant application contained false statements and omissions because police officers knew that the confidential informant was lying when they claimed to have been inside his apartment, and that the officer that applied for the warrant in turn made a false statement or omission when he relayed the informant's claims in the affidavit of probable cause. In support of this contention, Deshields points out that police officers seized video surveillance

footage of the apartment, and he claims that their subsequent review of the footage would have showed them that the informant never entered the apartment. But Deshields provides no reason to believe that the footage actually disproves the informant's presence inside the apartment.[1] More importantly, regardless of what the footage shows, it is undisputed that police reviewed the footage after the swearing of the affidavit of probable cause and after the execution of the warrant, so anything that the officers learned from the footage does not speak to the affiant's knowing or reckless disregard for the truth at the time the affidavit was sworn. *See United States v. Cruz*, No. 1:14-CR-00070, 2015 WL 5514816, at *7 n. 7 (M.D. Pa. Sept. 17, 2015). Deshields does not proffer any other facts, arguments, or evidence to support his belief that the warrant or supporting affidavit contain a false statement or omission that was made knowingly or with reckless disregard for the truth.[2] His request for a hearing thus rests entirely on conclusory allegations. The court will therefore deny Deshields' request for a *Franks* hearing because he has not made a

---

[1] Deshields' briefing in support of his motion represents that he is in possession of a copy of the surveillance footage and that he is "well aware" of the identity of the confidential informant. (Doc. 50, p. 3, n.1; Doc. 63, p. 3.) The only fact he provides to support his contention that the confidential informant lied about being inside his apartment, however, is a single footnote in his moving brief stating that defense counsel "believes that the [confidential informant] is never depicted entering [Deshields'] apartment." (Doc. 50, p. 3, n.1.)

[2] To the extent Deshields implicitly argues that the confidential informant was without sufficient credibility such that the affiant could not reasonably rely on the representations, this argument fails for the substantially the same reasons outlined in the court's discussion of the adequacy of the affidavit of probable cause: there is no reason to believe that the informant lacked sufficient credibility.

"substantial preliminary showing" that the affidavit of probable cause contained a false statement. *Yusuf*, 461 F.3d at 383.

## B. The search warrant contained a substantial basis for finding probable cause.

Deshields next argues that the September 26, 2018 warrant application was not supported by probable cause and that evidence recovered from the search must be suppressed. In determining whether probable cause exists to support the issuance of a search warrant, courts consider the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). The judicial authority issuing the warrant must decide whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* at 238. Direct evidence linking a residence to criminal activity is not required to establish probable cause. *United States v. Burton*, 288 F.3d 91, 103 (2002). Probable cause is something less than a prima facie showing but requires, at least, "a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. 213 at 235, 237 (cleaned up).

District courts "exercise only a deferential review of the initial probable cause determination made by the magistrate." *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993) (citing *Gates*, 462 U.S. at 236; *see United States v. Jones*, 994 F.2d 1051, 1057 (3d Cir. 1993) ("[O]ur role is not to make our own assessment as to whether probable cause existed. Rather, we are constrained to determine only

whether the affidavit provides a sufficient basis for the decision the magistrate judge actually made.")). "This, however, does not mean that reviewing courts should simply rubber stamp a magistrate's conclusion." *United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002) (internal quotation marks omitted). Instead, "courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued," and evaluate whether the judge had a "substantial basis" for concluding probable cause existed justifying the issuance of a warrant. *Gates*, 462 U.S. at 238-239.

Here, the affidavit of probable cause attests the informant told police that they were inside Deshields' apartment within the preceding 72 hours, during which they viewed heroin, crack cocaine, and marijuana packaged for sale. The informant told police the address and floor of the apartment, and also informed officers about the existence of exterior surveillance cameras. Police corroborated elements of the tip by confirming Deshields' address in two law-enforcement databases, by viewing the exterior surveillance cameras, and by confirming that Deshields had prior convictions for felony drug delivery in York County during 2008, 2009, and 2011. *See United States v. Stearn*, 597 F.3d 540, 557 (3d Cir. 2010). In addition, the confidential informant, who was a drug-user and was familiar with the manner in which drugs were sold in York County, identified Deshields by his nickname "Roach," who York City Police knew to be Deshields based on prior contacts.

Further, the affidavit stated that the confidential informant had a history of providing reliable information that directly led to the arrests of at least ten individuals in York County for drug deliveries. This information combined provided the judge with "a fair probability that contraband or evidence of a crime [would] be found" in Deshields' apartment. *Gates,* 462 U.S. 238.

Deshields argues that the informant's knowledge of the apartment address provides little corroboration that they were present in the apartment because "a mere internet search could have revealed" the information. He similarly contends that police verification regarding the existence of external surveillance cameras provided minimal corroboration because the cameras "were in plain view for anyone to see." (Doc. 50, p. 6.) Of course, Deshields is correct that the corroboration of publicly-available information is entitled to less weight, but the accurate description of the apartment's location and exterior certainly lent some credence to the informant's claim that they were recently inside.[3] *See generally Stearn*, 597 F.3d at 557. More importantly, the informant's credibility was established by substantially more than just police verification of information observable to the public at large. The informant knew Deshields by his alias "Roach," made claims that matched Deshields' criminal drug delivery history, and had a track record of reliability that

---

[3] The affidavit suggests that the informant reported knowing Deshields only by the nickname "Roach," which would indicate that the informant's knowledge of the address did not come from an internet directory. (Doc., 49-3 p. 2.)

permitted police to rely on information that was not otherwise sufficiently corroborated. Even further, the informant made the claims based on purported first-hand observation of criminality that occurred within the preceding 72 hours, and "[c]ourts accord great weight to [an informant's] first-hand observations shortly before a search." *United States v. Woods*, 254 F. App'x 889, 892 (3d Cir. 2007); *see also United States v. Ramsey*, No. 1:12–CR–310, 2013 WL 6388518, at *3 (M.D. Pa. Dec. 5, 2013); *Am. Fed'n of State Cty. & Mun. Emps. Dist. Council No. 33, AFL-CIO v. City of Philadelphia*, No. CV-03-371, 2012 WL 1070110, at *4 (E.D. Pa. Mar. 29, 2012).

Finally, Deshields also argues that the informant should not have been considered reliable because their past tips resulted only in the arrest of individuals, but not their conviction. This argument has been rejected by the Third Circuit. *See United States v. Marino*, 682 F.2d 449, 453 (3d Cir. 1982); *Woods*, 254 F. App'x at 891, n.1. Though the Third Circuit cases involved confidential informants whose past tips resulted in the arrest of and the "securing of information and evidence" against individuals, they also stand for the proposition that no bright line rule exists for assessing an informant's reliability. *See e.g.*, *Woods*, 254 F. App'x at 892 ("Corroboration is necessary 'in the absence of a statement detailing the manner in which the information was gathered.'") (quoting *Marino,* 682 F.2d at 453)*.* Given the informant's background and the nature of their allegations, law enforcement

corroboration of elements of the informant's reporting, and the informant's track record of providing police with information that led directly to the arrests of at least ten individuals within the same county for felony drug delivery, the informant was properly considered to be reliable. A reasonable reading of the affidavit as a whole provided the state court judge with a substantial basis for issuing the warrant based upon a fair probability that contraband would be found inside Deshields' apartment. Suppression is not required.

### C. The government is not required to disclose the identity of the confidential informant.

Deshields also requests that the court compel the government to disclose the identity of the confidential informant relied upon in the September 26, 2018 warrant application. "Courts have long recognized the government's right to withhold the identity of informants from defendants." *United States v. Gayle*, 400 F. App'x 689, 691 (3d Cir. 2010) (citing *Roviaro v. United States*, 353 U.S. 53, 77 (1957); *see also McCray v. State of Illinois*, 386 U.S. 300, 309 (1967)). The privilege is a qualified, however, and it must give way if the informant's identity is "relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause." *Roviaro*, 353 U.S. at 61. The defendant bears the burden of showing a specific need for disclosure. *United States v. Jiles*, 658 F.2d 194, 197 (3d Cir. 1981). "[M]ere speculation as to the usefulness of the informant's testimony to the defendant is

insufficient to justify disclosure of his identify." *United States v. Bazzano*, 712 F.2d 826, 839 (3d Cir. 1983); *see Jiles,* 658 F.2d at 197.

There is no fixed rule for when disclosure is necessary, and if the defendant sets forth a specific need for disclosure of an informant's identity, the court must balance the public interest in protecting the flow of information against the defendant's right to prepare his defense. *Jiles,* 658 F.2d at 196; *Roviaro*, 353 U.S. at 62. In balancing these interests, the court considers the offense charged and possible defenses, the potential significance of the informant's testimony and whether it is highly relevant, whether the testimony will disclose evidence of entrapment or raise doubts regarding the defendant's identity, and whether the informant was the sole participant other than the accused in the crime charged. *See Jiles*, 658 F.2d at 197-99. District courts have "substantial leeway" to "determine on a case-by-case basis" whether disclosure is appropriate. *United States v. Brown*, 3 F.3d 673, 679 (3d Cir. 1993); *see United States v. Goode*, 486 Fed. App'x 261, 264 (3d Cir. 2012).

Deshields makes two arguments to support his need for disclosure. First, he argues that disclosure should be compelled because "law enforcement is well aware that the [informant] never entered Mr. Deshields' apartment," and that, "[a]ssuming the informant admits to their deception," the court will need to decide whether to suppress the evidence of the search. (Doc. 50, p. 11.) Second, he argues that the informant's testimony is needed at trial "to admit to their deceptive statements made

to police" and "so that the jury can determine whether he possessed the items which were recovered and to divine his intent, if possessed." (*Id*.) Neither argument is persuasive.

Deshields' first argument that the informant's testimony is necessary because the informant lied to police about being inside Deshields' apartment and since police knew about the deception is based on pure speculation and does not provide a sufficient basis for disclosure. *See United States v. Rivera*, 524 F. App'x 821, 827 (3d Cir. 2013) ("Government was not required to disclose the identities of the two confidential informants. Rivera has not shown that the informants' testimony was needed for any of the purposes that we recognized in *Jiles*. He simply asserts that it was needed for his defense and speculates that the informant who completed the controlled buys would admit that the seller had not been Rivera."). There is no suggestion in the record that the informant deceived law enforcement, and there is no reason to believe that officers had any basis to suspect such deception. Deshields' hope that disclosure of the informant's identity will lead to evidence supporting a *Franks* showing, without more, is not a sufficient basis for disclosure, particularly given the informant's limited role, which related solely to probable cause. *See United States v. Stanton*, 566 F. App'x 166, 168 (3d Cir. 2014) ("Because Stanton hoped that the identity of the confidential informants would provide a basis for a hearing under *Franks* and because the informants' roles pertained to probable cause, we

conclude that the District Court did not abuse its discretion in denying Stanton's motion."); *Rivera*, 524 F. App'x at 827 ("Where an informant's role was in validating a search, disclosure of his identity is not required.") (quoting *Bazzano*, 712 F.2d 839) (brackets omitted).

Deshields' second argument fails for similar reasons. His claim that the informant is needed at trial to testify about lying to police is not only speculative, as above, but also irrelevant. Deshields does not explain why such testimony would assist him in defending against the substantive offenses. Nor can the court divine an explanation. Similarly, Deshields' contention that the informant's testimony is needed "so that the jury can determine whether [Deshields] possessed" items that were found in his apartment, which was wired with recorded surveillance cameras, does not even speculate as to the usefulness of such testimony. Deshields therefore has not carried his burden of showing that the informant's testimony would be relevant and helpful to the defense or that it is essential to a fair determination of a cause, and the balance of interests strongly disfavor disclosure. Accordingly, the government is not required to disclose the informant's identity.

### D. Joinder of the offenses is proper and severance is not necessary.

Deshields also moves to sever Counts 1-3 and Counts 4-6 for purposes of trial. Rule 8(a) of the Federal Rules of Criminal Procedure governs joinder of offenses and provides that an "indictment or information may charge a defendant in separate

counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." "[C]ounts are similar if they are 'somewhat alike' or share 'a general likeness,' or otherwise have a sufficient logical connection and can be tried using the same evidence." *United States v. Heilman*, 377 F. App'x 157, 202 (3d Cir. 2010) (internal citation omitted). Further, "offenses may be joined if they occurred within a relatively short period of time of each other and the evidence of each overlaps." *Id.*

Joinder of offenses is consistent with the purpose of Rule 8 to promote judicial economy and is the rule rather than exception. *United States v. Gorecki*, 813 F.2d 40, 42 (3d Cir. 1987); *see United States v. Brown*, No. 02-CR-146, 2002 WL 32739530, at *3 (M.D. Pa. Dec. 17, 2002). District courts may consider documents other than the indictment to determine whether joinder is proper under certain circumstances, such as where representations made in pretrial documents clarify factual connections between counts. *United States v. McGill*, 964 F.2d 222, 242 (3d Cir. 1992). The party challenging joinder bears the burden of persuasion. *See Gorecki*, 813 F.2d at 42.

Under Rule 14, the court may order separate trials of counts, or provide any other relief that justice requires, if the joinder of offenses for trial appears to

prejudice a party. Severance should only be granted, however, if there is "serious risk" that a joint trial would compromise "a specific trial right." *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). The party seeking severance must show clear and substantial prejudice that would result in a manifestly unfair trial, and it is insufficient to show that severance would increase the defendant's odds of acquittal. *United States v. Riley*, 621 F.3d 312, 335 (3d Cir. 2010). "Some exacerbating circumstances, such as the jury's inability to compartmentalize the evidence, are required." *United States v. Adams*, 759 F.2d 1099, 1112-13 (3d Cir. 1985) (cleaned up). Severance under Rule 14 is a matter entrusted to the sound discretion of the district court. *United States v. Lore*, 430 F.3d 190, 205 (3d. Cir. 2005).

Here, joinder of the offenses was proper under Rule 8(a) because the offenses share a transactional nexus and are of a similar character. Counts 1 through 3 involve identical offenses as Counts 4 through 6. Both sets of charges, as alleged, involve similar conduct, including the Deshields' possession of firearms in furtherance of drug trafficking and his possession with intent to distribute controlled substances, namely cocaine. They arise from conduct that occurred in the same county within a single period of 35 days. *United States v. Green*, 563 F. App'x 913, 917 (3d Cir. 2014) ("The approximate month-long time period between each robbery does not militate against joinder, as we have previously noted charges separated by a period

of a little over a month suggests that the various charges were part of the same series of transactions.") (quoting *United States v. Walker*, 657 F.3d 160, 170 (3d Cir. 2011) (cleaned up)). Given the factual and legal similarities between the offenses and their close physical and temporal proximity, joinder was proper under Rule 8(a).

Deshields does not challenge that the offenses are of similar conduct (*see* Doc. 50, p. 7), but he summarily argues that the offenses do not share a transactional nexus because Count 1 involves possession with intent to distribute cocaine, while Count 4 involves possession with intent to distribute cocaine, cocaine base, and oxycodone. Deshields cites no authority for this argument, however, and the law is clear that joinder does not require that offenses be identical. As such, the inclusion of cocaine hydrocholoride and oxycodone in Count 4 does not defeat the overwhelming nexus between the charges.

Deshields also argues that a single trial would nevertheless be prejudicial under Rule 14 "because the jury will hear evidence of both incidents, which otherwise would be inadmissible if each case is tried separately." (Doc. 50, p. 8.) According to Deshields, there is little to no overlap between the evidence to be presented on the two sets of offenses, and if a single jury hears all the evidence it would increase his risk of being convicted based on inadmissible criminal propensity and prior bad acts. These bare assertions are insufficient to demonstrate a substantial risk of prejudice. *See e.g., Green*, 563 F. App'x at 917-18 ("Even assuming joinder

is prejudicial because it would allow the jury to combine its stronger and weakest cases this to be the case, Green's argument does no more than show severance would have increased his chances of acquittal, which is not sufficient to meet Rule 14(a)'s prejudice standard."); *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981) ("Mere allegations of prejudice are not enough[.]"); *United States v. Fumo*, No. CR-06-319, 2008 WL 109667, at *3 (E.D. Pa. Jan. 9, 2008) ("[S]imple allegations that the jury will convict based on criminal propensity are not sufficient for severance.").

Rather, the relevant inquiry is whether the jury will be able to compartmentalize the evidence on each count by considering each incident separately, and Deshields provides no reason that will not be the case. *Walker*, 657 F.3d at 165; *Green*, 563 F. App'x at 917. The six counts against him involve similar underlying conduct but arise from distinct incidents occurring approximately one month apart. For each incident, Deshields is charged with possession with intent to distribute a controlled substance, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm as an armed career criminal. The charges do not present particularly complex or technical issues that might confuse jurors, and the court has no reason to believe that a properly instructed jury will be unable to compartmentalize the evidence, as appropriate, with respect to each separate count. *See Zafiro,* 506 U.S. at 540-41 (juries "are presumed to follow their instructions"); *Lore,* 430 F.3d at 206.

In addition, the primary source of factual overlap between the two charges would appear to go to the issue of intent to traffic drugs, and though Deshields is correct that Rule 404(b)(1) precludes evidence of crimes and wrongs "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," such evidence may be admissible under Rule 404(b)(2) to prove intent and lack of mistake. Therefore, even if the offenses are severed, there would likely be at least some cross-admissibility of evidence, such as the cutting agent, sifter, and multiple surveillance cameras recovered from Deshields' apartment.[4] This cross-admissibility of Rule 404(b) evidence further "militates against finding prejudice." *United States v. Scott*, 266 F. App'x 206, 209 (3d Cir. 2008); *see also United States v. Christy*, No. 3:18-CR-223, 2019 WL 636981, at *4 (M.D. Pa. Feb. 14, 2019) ("[T]he lack of perfect cross-admissibility of evidence between sets of charges if separate trials were held does not mean that a single trial would be prejudicial.") (citing *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991); *Bean v. Calderon*, 163 F.3d 1073, 1085 (9th Cir. 1998)).

---

[4] Deshields argues that the government has not met its burden of demonstrating that the evidence will be admissible for non-propensity purposes, and while the court agrees, definitive evidentiary rulings are not required at this stage. *See e.g, Gorecki*, 813 F.2d at 42-43 (noting that evidence of a narcotics charge "would probably have been admissible" in a separate trial on a weapons charge); *United States v. Hill*, No. 3:17-CR-00276, 2019 WL 2110573, at *3 (M.D. Pa. May 14, 2019) ("Although nothing in this memorandum opinion should be interpreted by the parties as a ruling by this Court on the admissibility of any evidence at this time, the Court notes that evidence of Defendant's first offense…may be admissible under Rule 404(b)(2), or other applicable rules of evidence, in a trial on the [second charge] for a purpose other than showing that the Defendant acted in accordance with his character or a particular character trait.").

Finally, Deshields argues in his reply brief that a jury may be unable to follow a limiting instruction because he is a black male charged with drug and firearms offenses and is likely to have a jury with "few, if any" black people. (Doc. 63, p. 6.) Deshields argues that drug dealing and violence are attributed to black males due to unconscious bias, such that any limiting instruction by the court would be unlikely to cure prejudice against him. Deshields is all too correct that racial stereotypes are present in this country. But the fact that persons within society at large harbor racial stereotypes does not, without more, create a serious risk that a yet-to-be-selected jury pool will infect Deshields' right to a fair trial based on conscious or unconscious racial prejudice. To accept that similar gun and drug offenses be severed based solely on the potential ethnic makeup of a future jury pool would go too far. Rooting out potential juror bias is why we have voir dire. The court takes its gatekeeping function seriously and vows to work diligently, alongside counsel, from jury selection until final verdict, to protect Deshields' right to a fair trial. Severance is not appropriate.

### III.   <u>CONCLUSION</u>

For the reasons set forth above, Defendant Jasean Deshields' motion to suppress evidence, for severance of the offenses, and to reveal the identity of the confidential informant (Doc. 49) will be denied. An appropriate order shall follow.


*s/Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: April 14, 2021